## FISKE v. WILLIAMS.

(Supreme Court, Appellate Division, Fourth Department. April, 1896.)

CONTRACTS—CONSTRUCTION.

A writing delivered simultaneously with the indorsement and delivery of a note by the payee, accompanied by shares of stock, after reciting that the stock was delivered as collateral to the indorsement, provided that, if the note was not paid at maturity, the holder of the note should first exhaust his remedy against the maker, and, if the security given by the maker was not sufficient to pay the note, then the stock should be for the payment of whatever deficiency there might be. *Held*, that such writing, giving effect to every part thereof, showed a pledge of the stock, not as security for the indorsement merely, but for the payment of any deficiency that might remain after the indorsee had exhausted his remedy against the maker. Green, J., dissenting.

Appeal from special term, Monroe county.

Action by Edwin B. Fiske against Demian D. Williams to recover shares of stock alleged to have been delivered to defendant merely as collateral security for plaintiff's indorsement of a note. From a judgment dismissing the complaint on the merits, after a trial without a jury, plaintiff appeals. Affirmed.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, WARD, and GREEN, JJ.

Robson & Robinson, for appellant.

P. M. French, for respondent.

HARDIN, P. J. When Fiske indorsed the note, and delivered it to the defendant, he placed his name upon the note, which was to run some months to .maturity. There was a twofold purpose accomplished by his indorsement: First, it was necessary that his name should be placed upon the note in order to transfer the legal title to the note; second, he, by placing his name upon the note, made a commercial contract, which made him additionally liable for the debt of the maker in the event the note was presented for payment at its maturity, demand and notice of protest given. At the same time that he indorsed the note, there were accompanying it 100 shares of the Scugog Medicine Company stock, that were pledged as collateral to the maker's obligation to pay the note. Apparently, the defendant, who was to advance the money for the note, was not satisfied with the obligation of Madden, the maker, nor with the Scugog Medicine stock, and required further security as a condition of parting with his money for the note. Thereupon, apparently, the plaintiff delivered to the defendant 15 shares of the Standard Electric Signal Company stock; and, in connection with the delivery of the note and the Scugog Medicine Company stock, he delivered the 15 shares of the Standard Electric Signal Company stock, and, simultaneously with the delivery therewith, executed an agreement which is set out in the findings of fact made by the trial judge. Upon an inspection of that agreement, it is found to recite that Fiske, the plaintiff, was to or had indorsed the note in question, and there is a recital in the agreement to the effect that the stock was delivered by the plaintiff, to wit, the 15 shares of the Standard Elec-

tric Signal Company, as collateral to the indorsement. If the language of the instrument closed there, then there might be force in the contention of the plaintiff. But there was further language used, to wit:

"And it is expressly understood and agreed that the holder and owner of said note, if the same is not paid on or before maturity, is first to exhaust his remedy as against R. M. Madden, the maker; and, if the security given by him is not sufficient to pay and discharge said note, then the certificate of stock hereto annexed is for the payment of such deficiency, whatever it may be."

It is a well-settled canon for the construction of instruments executed by parties that full force and significance should be given to all the language used by them, and that if two constructions are possible to an instrument, one of which does not give significance to all the words used, and another can be given to the instrument which will give force and effect to all the words found in the instrument, the latter construction is to be preferred and adopted; and, in case the meaning of the words is doubtful, it is to be construed the most strictly as against the covenantor whose words they are. Applying these rules of construction to the instrument executed by the plaintiff, it seems reasonable to place upon it the construction which evinces an intention to pledge his stock as security for any deficiency that might arise after exhausting the remedies against Madden, the maker of the note; and after conversion and application of the proceeds of the sale of the Scugog Medicine Company stock, and for the purpose of satisfying the deficiency which arose after exhausting the prior sources, the stock of the Standard Electric Signal Company was a security in the hands of the defendant, and he was entitled to it for the purpose of satisfying "the deficiency" remaining after the exhaustion of the liability of Madden and the sale of the Scugog Medicine Company stock. Hence, at the time this action was commenced, the defendant had not wrongfully converted the property of the plaintiff, known as the 15 shares of the Standard Electric Signal Company described in the complaint; and it was therefore proper, at the close of the trial, to order judgment in favor of the defendant. The judgment should be affirmed. Judgment affirmed, with costs.

FOLLETT, ADAMS, and WARD, JJ., concur.

GREEN, J. (dissenting). The indorsement of the note, the execution of the agreement, and pledge of the stock by Fiske were all one and the same transaction. The note was payable to his order, and indorsed by him and delivered to Williams so indorsed. The note itself is proof of the intention and understanding of all the parties that Fiske's liability was that of an indorser only. This is further emphasized by the agreement itself, which contains the recital that the maker of the note, Madden, had given 100 shares of stock "to secure the indorser of said note from any harm," as well as to secure the payment of said note. If it had been the intention of the indorser to secure the payment of the note, it would have been

so provided in the clause of the contract wherein was recited the collateral which had actually been given for that purpose. But that was not its purpose. That is expressed in clear and unmistakable terms: "Now, the 15 shares of capital stock of the Standard Electric Signal Co. hereto annexed is given as collateral security for my indorsement of said note." The contract, therefore, was a contract of indorsement, as shown by the note itself and the agreement. Fiske's liability as indorser was limited, and depended upon the condition that the holder of the note should make demand for payment at maturity, and, upon default, give notice of dishonor to the indorser. If the holder omitted to perform these essentials, then the indorser would stand discharged. These prerequisites were not fulfilled by the holder, and the indorser's liability as such was never fixed, and he is discharged from all liability upon that note.

It is claimed, however, that defendant could enforce his deficiency, after exhausting the remedy against Madden, by virtue of the last clause of the agreement made by Fiske. I do not so construe that portion of the contract. It is apparent that that clause was inserted by plaintiff as a protection to himself after his liability as indorser had become fixed by demand for payment, default, and notice given him of same. It was then provided that Williams should exhaust his remedy against Madden and the security given by him for the payment of the note before enforcing payment against the indorser. Without this agreement, Fiske, as indorser, could not compel the holder to sue the maker first, or enforce his claim against the security given by the maker, and, in the absence of a conditional and controlling equity, resort to a collateral security. Fiske therefore provided by this contract that the holder should first resort to the maker and his collateral. Madden's liability was absolute. Fiske's was conditional upon the holder fulfilling the obligations imposed upon him by the commercial law,—to present the note for payment and give notice of nonpayment in the mode prescribed by the settled rules of that law. He was under obligations to Fiske to fix his liability as indorser before resorting to his security for the pledge given under the implied assurance of law that he should have notice of presentment, demand, and default. It appears to me that if Fiske and Williams intended an unconditional grant the contract would not have first provided by its terms for a conditional and then an unconditional grant. Certainly Fiske could not have intended to give his stock as collateral security for his indorsement of the note, —that is, conditionally,—and then in the same sentence free it from those conditions by giving it as security for the payment of the note.

A reasonable construction of this entire contract leads me to the conclusion that the stock of plaintiff was pledged as security for his indorsement whenever his liability as indorser should become fixed, and not for the payment of the note unconditionally. His liability as indorser was never fixed, and he is exonerated from such liability by the failure of this defendant to perform the obligations imposed upon him.

The judgment should be reversed, and a new trial granted, with costs to abide the event.